IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| **Ronnie Portee,** ) | |
| ) | Civil Action No. 3:18-cv-02106-MGL |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| ) | **PERSONAL INJURY** |
| **Apple Incorporated; Asurion Protection** ) | |
| **Services, LLC; 4L Technologies, Inc.;** ) | |
| **Clover Technologies Group, LLC; Clover** ) | **PLAINTIFF'S FIRST AMENDED** |
| **Wireless, LLC; Sprint Corporation;** ) | **COMPLAINT** |
| **Sprint Solutions, Inc.; Valutech** ) | |
| **Outsourcing, S.A. De C.V.; Valu Tech** ) | |
| **Outsourcing, LLC; and John Does 1-10,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendants.** ) | |

By and through his undersigned Counsel of Record and pursuant to the Federal Rules of Civil Procedure, Plaintiff Ronnie Portee ("Mr. Portee") files this Amended Complaint for Damages to add 4L Technologies, Inc. ("4L"); Clover Technologies Group LLC ("Clover I"); Clover Wireless, LLC ("Clover II"); Sprint Corporation ("Sprint I"); Sprint Solutions, Inc. ("Sprint II"); Valutech Outsourcing, S.A. De C.V. ("Valutech, S.A.") and Valu Tech Outsourcing, LLC ("Valu Tech") as Defendants in this action. As such, this Amended Complaint asserts causes of action against the Defendants named above, based on the allegations set forth below.

## NATURE OF THE ACTION

1. This personal injury action seeks compensatory and punitive damages for the injuries sustained by Mr. Portee, which resulted from the Defendants' defective products, negligent acts, and omissions. Specifically, Mr. Portee was injured when his Apple iPhone 6 (hereinafter "iPhone" or "iPhone 6") exploded in his pocket in Sumter, South Carolina. He

suffered second and third degree burns along with multiple surgeries. These events form the basis of Plaintiff's causes of action against the Defendants. Plaintiff seeks actual and consequential damages as well as punitive damages to halt and deter such conduct from taking place in the future.

## PARTIES

2. Plaintiff, Mr. Portee, is a citizen and resident of Sumter County, South Carolina.

3. Defendant, Apple Incorporated ("Apple"), is a business incorporated in the state of California with its principal place of business located at 1 Infinite Loop, MS: 38-3TX, Cupertino, California. Apple's registered agent for service of process is CT Corporation System, 818 W 7th Street, Suite 930, Los Angeles, California 95014.

4. Defendant, Asurion Protection Services, LLC ("Asurion"), is a business incorporated in the State of Tennessee with its principal place of business located at 648 Grassmere Park, Nashville, TN 37211. Asurion's registered agent for service of process is National Registered Agents, Inc., 300 Montvue Rd., Knoxville, TN 37919-5546 USA.

5. Defendant, 4L Technologies, Inc. ("4L"), is a business incorporated in the State of Illinois with its principal place of business located at 4200 Columbus Street, Ottawa, IL 61350-9538. 4L's registered agent for service of process is Illinois Corporation Service C, 801 Adlai Stevenson Dr., Springfield, IL 62703 USA.

6. Defendant, Clover Technologies Group, LLC ("Clover I"), is a business incorporated in the State of Illinois with its principal place of business located at 4200 Columbus Street, Ottawa, IL 61350-9538. Clover I's registered agent for service of process is Illinois Corporation Service C, 801 Adlai Stevenson Dr., Springfield, IL 62703 USA.

7. Defendant, Clover Wireless, LLC ("Clover II"), is a business incorporated in the State of Illinois with its principal place of business located at 4200 Columbus Street, Ottawa, IL 61350-9538. Clover II's registered agent for service of process is Illinois Corporation Service C, 801 Adlai Stevenson Dr., Springfield, IL 62703 USA.

8. Defendant, Sprint Corporation ("Sprint I"), is a business incorporated in the State of Kansas with its principal place of business located at 6200 Sprint Parkway, Overland Park, KS 66251. Sprint's registered agent for service of process is Corporation Service Company, 2900 SW Wannamaker Dr., Suite 204, Topeka, KS 66614 USA.

9. Defendant, Sprint Solutions, Inc. ("Sprint II"), is a business incorporated in the State of Kansas with its principal place of business located at 6200 Sprint Parkway, Overland Park, KS 66251. Sprint II's registered agent for service of process is Corporation Service Company, 2900 SW Wannamaker Dr., Suite 204, Topeka, KS 66614 USA.

10. Defendant, Valutech Outsourcing, S.A. De C.V. ("Valutech, S.A."), is a business incorporated in Mexico with its principal place of business located at Boulevard Manuel Gómez Morín No. 569, Parque Industrial Las Californi, MEXICALI, BAJA CALIFORNIA, 21394 Mexico. Valutech's legal office for service of process is Illinois Corporation Service C, 801 Adlai Stevenson Dr., Springfield, IL 62703 USA.

11. Defendant, Valu Tech Outsourcing, LLC ("Valu Tech"), is a business incorporated in California with its principal place of business located at 34700 Coast Highway, Suite 301, Capistrano Beach, CA 902624. Valu Tech's legal office for service of process is Illinois Corporation Service C, 801 Adlai Stevenson Dr., Springfield, IL 62703 USA.

12. The true names of John Doe 1 through John Doe 10, and their capacities, whether individual or corporate, presently unknown to Plaintiffs. John Doe 1 through John Doe 10, at all times

relevant to this action, were employees, agents, partners, associations, subsidiaries, distributors, suppliers, sellers, consultants, designers and/or independent contractors of the defendants, or were entities that were joined with the defendants or engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product used to construct and provide power to the Apple iPhone at issue herein.

## **JURISDICTION**

13. Jurisdiction in this Court is established by complete diversity of citizenship and damages in excess of $75,000 pursuant to 28 U.S.C. § 1332 by virtue of the fact that at all times relevant hereto Plaintiff was and continues to be a resident and citizen of the State of South Carolina.

14. Defendant Apple was and continues to have its principal place of business in the State of California.

15. Defendant Asurion was and continues to have its principal place of business in the State of Tennessee.

16. Defendant 4L was and continues to have its principal place of business in the State of Illinois.

17. Defendant Clover I was and continues to have its principal place of business in the State of Illinois.

18. Defendant Clover II was and continues to have its principal place of business in the State of Illinois.

19. Defendant Sprint I was and continues to have its principal place of business in the State of Kansas.

20. Defendant Sprint II was and continues to have its principal place of business in the State of Kansas.

21. Defendant Valutech was and continues to have its principal place of business in Mexico.

22. Defendant Valu Tech was and continues to have its principal place of business in California.

23. The underlying consumer transaction and purchase took place in Sumter, South Carolina.

## VENUE

24. Venue is proper in this District under 28 U.S.C. § 1391(a) as it is the judicial district in which a substantial part of the events or omissions giving rise to the claims alleged herein occurred.

## CONDITIONS PRECEDENT

25. All conditions precedent to the filing of this action and to the Plaintiff's right to the relief sough have occurred, have been performed, or have been excused.

## FACTS COMMON TO ALL COUNTS

26. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

27. The iPhone 6 is a smartphone designed and marketed by Apple, which was released to the public on September 19, 2014.

28. Apple sold 74.5 million iPhone 6's to consumers in the fourth quarter of 2014 alone, which contributed to quarterly revenue of $74.6 billion.

29. Sometime prior to May of 2016, Defendant Apple designed, manufactured, sold, and placed into the stream of commerce the Plaintiff's iPhone 6 ("iPhone"), serial number 089878528605837844 and IMEI 359260065914142.

30. In May 2016, Mr. Portee received the iPhone and all relevant times thereafter used it for its ordinary purpose.

31. Upon information and belief, the iPhone supplied was part of a contractual insurance agreement with Sprint which provided a replacement phone to Mr. Portee when his original phone's screen cracked.

5

32. Upon information and belief, Sprint had agreement with one or more of the following Defendants upon receiving a request for a replacement phone such as the one at issue in this case: Defendants 4L; Clover I; Clover II; and Sprint.

33. Mr. Portee paid a $200 insurance deductible for the replacement iPhone that was added to his monthly bill from Sprint, and upon information and belief, it was delivered to him via United States Mail.

34. At all times relevant hereto, Defendants were corporations, operating, and engaged in business in the State of South Carolina.

35. At all times relevant hereto, Plaintiff was a consumer of goods and services in connection with the iPhone.

36. At all times relevant hereto, Defendants knew, or reasonably should have known about the possibility of the iPhone exploding.

37. At all times relevant hereto, Defendants failed to warn Mr. Portee of the possibility of the iPhone exploding.

38. On October 25, 2016, Plaintiff was using his Apple iPhone for its ordinary purpose. Specifically charging it with the charger provided with the iPhone and speaking on it.

39. Mr. Portee had recently ended a telephone call with his wife, placed the iPhone in his pocket, and was walking through his son's home when the explosion occurred.

40. At some point in time soon thereafter, Mr. Portee began feeling extreme heat as well as the crackling of the clothes on his body burning.

41. Upon discovering that both his flesh and his clothes were burning, Mr. Portee stumbled and tore off all of his clothes.

42. Mr. Portee was rushed by his son to Palmetto Health Tuomey Hospital ("Toumey"), in Sumter, South Carolina for emergency medical treatment.

43. Once the treating physicians at Toumey were able to see the severity of his injuries, he was emergency air lifted to the Joseph M. Still Burn Center in Augusta, Georgia.

44. Preliminary investigations show evidence of a significant and localized heating event in the battery area of the iPhone indicating that an internal failure of the battery causing an explosion while the phone was in Mr. Portee's pocket.

45. As a direct result of the iPhone failure, Mr. Portee suffered severe burns on his back, arms and limps due to the incident on October 25, 2016.

46. Mr. Portee has since undergone several surgical operations due to the injuries sustained as a result of his iPhone explosion and will continue to suffer both physically and emotionally for the rest of his life.

47. Mr. Portee also has to live with the permanent scarring he suffered as a result of this incident.

## DAMAGES

48. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

49. As a direct and proximate result of the Defendants' negligent and/or grossly negligent misconduct or omissions and defective products, Mr. Portee suffered:

    (i)   conscious pain and suffering;

    (ii)  past and future medical expenses; and

    (iii) such other and further particulars as the evidence may show.

50. The wrongful acts of the Defendants showed willful misconduct, malice, fraud, wantonness, oppression and that entire want of care, which would raise the presumption of conscious

indifference to consequences and the rights of others. Punitive damages should be imposed in an amount sufficient to keep such wrongful conduct from being repeated.

## CLAIMS FOR RELIEF

### COUNT ONE
Strict Liability (Design Defect) as to all Defendants

51. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

52. Defendants manufactured, created, designed, assembled, altered installed, distributed, supplied, sold, and maintained the iPhone and placed it in the stream of commerce.

53. The design, manufacture, and sale of the iPhone created a dangerous, unsafe, and defective condition, which existed at the time the iPhone left the hands of defendant Apple.

54. At the time the iPhone was designed, manufactured, and placed into the stream of commerce by Defendants, it was in a defective and unreasonable dangerous condition.

55. At all times material hereto, Defendants were engaged in the business of designing, manufacturing, refurbishing, and/or selling iPhones of the type purchased by Mr. Portee.

56. Upon information and belief, the aforementioned iPhone was expected to, and did, reach its end user without substantial change in the condition it was in when it left the business premises of one or more Defendants.

57. The aforementioned iPhone came in a white Apple box and included a white charging cable.

58. Mr. Portee neither misused nor materially altered the iPhone, and it was in the same or substantially similar condition that it was in at the time it left the hands of the Defendants.

59. At all relevant times, including when the incident alleged occurred, the iPhone was used in an intended and foreseeable manner.

60. The iPhone design and/or alteration was defective because the danger associated with the use of the iPhone as designed outweighs its utility.

8

61. Specifically, at the time of Mr. Portee's injury, the iPhone was in a defective condition unreasonably dangerous to users due to:

    i) Lack of a mechanism to prevent the iPhone from exploding;

    ii) Lack of audible or visual warnings and/or alarms to alert users that the iPhone was overheating and could explode;

    iii) Lack of a functioning mandatory shutdown of the iPhone once it reached a certain internal temperature;

    iv) Lack of proper component parts; and

    v) Such other and further particulars as the evidence may show.

62. Mr. Portee's ability to avoid injury was frustrated by the absence of such alternative designs incorporated into the iPhone design.

63. Taking into account costs, safety, and functionality, a feasible alternative design existed at the time that the iPhone was manufactured, created, designed, altered, assembled, installed, distributed, supplied, sold, and maintained.

64. As a direct and proximate result of the iPhone's defective design, Mr. Portee was severely burned.

65. By reason of the foregoing, Mr. Portee is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendants and the defective condition of the iPhone when placed into the stream of commerce.

66. Wherefore, Mr. Portee demands judgment against Defendants, jointly and severally, for all actual and compensatory damages together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT TWO
### Strict Liability (Manufacturing Defect) as to all Defendants

67. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

68. Defendants manufactured, created, designed, assembled, altered installed, distributed, supplied, sold, and maintained the iPhone and placed it in the stream of commerce.

69. Mr. Portee neither misused nor materially altered the iPhone, and it was in the same or substantially similar condition that it was in at the time that it left the hands of the Defendants.

70. At all relevant times, including when the incident alleged herein occurred, the iPhone was used in an intended and foreseeable manner.

71. The iPhone was defective in formulation or manufacture, such that when it was placed in the stream of commerce, it was unreasonably dangerous in that it was more dangerous than an ordinary user would expect given the conditions and circumstances that foreseeably attend its use and more dangerous than similar products which were available to Mr. Portee.

72. The danger associated with the use of the iPhone outweighs its utility.

73. The iPhone did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

74. Specifically, at the time the iPhone exploded, the iPhone was in a defective condition unreasonably dangerous to users due to:

    i) Lack of a mechanism to prevent the iPhone from exploding;

    ii) Lack of audible or visual warnings and/or alarms to alert users that the iPhone was overheating and could explode;

    iii) Lack of a functioning mandatory shutdown of the iPhone once it reached a certain internal temperature;

    iv) Lack of proper component parts; and

    v) Such other and further particulars as the evidence may show.

75. Mr. Portee's ability to avoid injury was frustrated by the manufacturing defects of the iPhone.

76. As a direct and proximate result of the iPhone's defective formulation and/or manufacture, Mr. Portee was severely burned.

77. By reason of the foregoing, Mr. Portee is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendants and the defective condition of the iPhone when placed into the stream of commerce.

78. Wherefore, Mr. Portee demands judgment against Defendants, jointly and severally, for all actual and compensatory damages together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT THREE
### Strict Liability (Failure to Warn) as to all Defendants

79. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

80. Defendants manufactured, created, designed, assembled, altered installed, distributed, supplied, sold, and maintained the iPhone and placed it in the stream of commerce.

81. Therefore, Defendants had a duty to warn users about the hazards inherent in the iPhone Platform.

82. The iPhone Platform posed potential risks that were known and/or should have been known by Defendants at the time of design, manufacture, distribution, and/or sale.

83. Specifically, the iPhone was in a defective condition unreasonably dangerous to users due to:

    i) Lack of a mechanism to prevent the iPhone from exploding;

    ii) Lack of audible or visual warnings and/or alarms to alert users that the iPhone was overheating and could catch explode;

      iii) Lack of a functioning mandatory shutdown of the iPhone once it reached a certain internal temperature;

      iv) Lack of proper component parts; and

      v) Such other and further particulars as the evidence may show.

84. Mr. Portee was unaware of the dangerous nature of the iPhone.

85. Because of these facts, the iPhone presented a substantial danger during intended and reasonably foreseeable use not readily recognizable to the ordinary user.

86. Defendants failed to adequately warn or instruct users, including Mr. Portee, of these potential risks of substantial danger.

87. The lack of such warnings rendered the iPhone defective.

88. As a direct and proximate result of the Defendants' failure to adequately warn of the substantial danger posed by the iPhone, it was defective, and Mr. Portee was severely burned.

89. By reason of the foregoing, Mr. Portee is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendants and the defective condition of the iPhone when placed into the stream of commerce.

90. Wherefore, Mr. Portee demands judgment against Defendants, jointly and severally, for all actual and compensatory damages together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT FOUR
### Negligence as to all Defendants

91. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

92. Defendants manufactured, created, designed, assembled, altered, installed, distributed, supplied, sold, modified and/or maintained the iPhone.

93. Additionally, Defendants specified and/or selected the component parts used on the iPhone.

94. The component parts specified and/or selected for the iPhone were grossly improper, specifically including the battery.

95. Defendants had a duty to exercise reasonable care to adopt safe design of the iPhone so that users such as Mr. Portee could safely use it as intended.

96. Defendants had a duty to exercise reasonable care in assembling and/or selecting component parts and inspecting and testing them before the iPhone left their possession to ensure that it was safe for its intended and reasonably foreseeable uses.

97. Defendants had a duty to warn users about the dangers of which they knew or reasonably should have known arising from the use of the iPhone and an affirmative duty to protect the ultimate users from the hazards inherent in its defective design.

98. Specifically, Defendants knew that the iPhone was dangerous to users due to:

    i) Lack of a mechanism to prevent the iPhone from exploding;

    ii) Lack of audible or visual warnings and/or alarms to alert users that the iPhone was overheating and could catch exploding;

    iii) Lack of a functioning mandatory shutdown of the iPhone once it reached a certain internal temperature;

    iv) Lack of proper component parts; and

    v) Such other and further particulars as the evidence may show.

99. Mr. Portee was unaware of the dangerous nature of the iPhone.

100. Defendants should have known that ultimate users such as Mr. Portee would not realize these inherent dangers.

101. Defendants owed Mr. Portee a duty of reasonable care and were negligent, grossly negligent, willful, wanton, reckless and careless, and breached their respective duties of care by:

    i) Failing to use reasonable care and precautions to ensure the safe use of the iPhone;

    ii) Failing to use reasonable care in the design of the iPhone;

    iii) Failing to exercise reasonable care in the manufacture of the iPhone;

    iv) Failing to exercise reasonable care in the specification, selection, and distribution of component parts for the iPhone;

    v) Failing to exercise reasonable care in the assembly of the iPhone;

    vi) Failing to incorporate safeguards into the design of the iPhone to prevent it from presenting an unreasonable risk of substantial danger to users;

    vii) Failing to exercise reasonable care in the inspection and testing of the iPhone;

    viii) Failing to exercise reasonable care in the installation of the component parts of the iPhone;

    ix) Failing to provide proper and safe materials for use in the and with the iPhone;

    x) Failing to take measures to ensure that the iPhone and accompanying parts were merchantable and safe for their intended use prior to placing these products in the stream of commerce;

    xi) Failing to discover through testing procedures that the iPhone was not properly manufactured and safe for its intended use;

    xii) Failing to discover through inspection procedures that the iPhone did not contain proper materials/parts and was unreasonably dangerous to users;

    xiii) Failing to adopt, implement, and/or convey adequate warnings of the dangers arising from the intended, reasonable, and foreseeable use of the iPhone; and

xiv) On such other and further particulars as the evidence may show.

102. Each Defendants' negligence was a substantial factor in causing Mr. Portee's severe burns.

103. As a direct and proximate result of the Defendants' negligence and the breaches complained of herein, Mr. Portee was severely burned and suffered damages.

104. By reason of the foregoing, Mr. Portee is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendants and the defective condition of the iPhone.

105. Wherefore, Mr. Portee demands judgment against Defendants, jointly and severally, for all actual and compensatory damages together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT FIVE
### Punitive Damages as to all Defendants

106. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

107. The actions and inactions of Defendants were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct causing substantial harm and resulting in damages to Mr. Portee.

108. More specifically, Defendants acted with a conscious and flagrant disregard for the rights and safety of Mr. Portee, and/or deliberately engaged in willful, wanton and reckless disregard for the safety of him.

109. By reason of the foregoing, Defendants are liable for punitive and exemplary damages.

110. Wherefore, Mr. Portee demands judgment against Defendants for punitive and exemplary damages, plus interest, costs and attorneys' fees for having to bring this action, and such other and further relief as this Honorable Court or jury may deem just and proper.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays as follows:

1. For a trial by jury and judgment against the Defendants for such sums as actual and other compensatory damages in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court.

2. For exemplary and punitive damages against Defendants in an amount as a jury may determine to halt and deter such conduct.

3. For the costs of this suit, including attorney's fees, expenses, and interest.

4. For such other and further relief to which she may be entitled and as this Honorable Court may deem just and proper.

                        **MOTLEY RICE LLC**

                        By:  s/ Kevin R. Dean
                            Kevin R Dean (*Fed Bar #8046)*
                            P. Graham Maiden (*Fed Bar #12247*)
                            MOTLEY RICE LLC
                            28 Bridgeside Boulevard
                            Mount Pleasant, SC  29464
                            (843) 216-9000
                            (843) 216-9450 (Facsimile)
                            kdean@motleyrice.com
                            gmaiden@motleyrice.com

                            George T. Sink, Jr. (*SC Bar #102829*)
                            **GEORGE SINK II LAW FIRM, LLC**
                            4000 Faber Place Dr.
                            Suite 300
                            North Charleston, SC  29405
                            (843) 970-0529
                            georgesink@gmail.com

                            *ATTORNEYS FOR PLAINTIFF*

Dated:  May 28, 2019
Mount Pleasant, South Carolina